| |
|---|
| **360 E. 72nd St. Owners Inc. v Wolkoff** |
| 2024 NY Slip Op 31173(U) |
| April 4, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 655998/2021 |
| Judge: Alexander M. Tisch |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    <u>HON. ALEXANDER M. TISCH</u>      PART   18

*Justice*

-------------------------------------------------------------------X

360 EAST 72ND STREET OWNERS INC.,

           Plaintiff,

     - v -

SABRINA WOLKOFF,

           Defendant.

-------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 655998/2021 |
| MOTION DATE | 10/19/2022 |
| MOTION SEQ. NO. | 003 |

**DECISION + ORDER AFTER HEARING**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 76, 77, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 102, 103, 104, 106, 107, 109, 112, 113, 114, 115, 116, 117, 118

were read on this motion to/for      <u>SUMMARY JUDGMENT (AFTER HEARING)</u> .

Defendant moved, pursuant to CPLR 3212, seeking dismissal of the proceeding. Plaintiff cross-moved, pursuant to CPLR 3212 seeking a declaratory judgment and permanent injunction. In an interim decision and order dated April 26, 2023, the Court ordered, pursuant to CPLR 3212 (g), that the motion and cross-motion be held in abeyance and directed the parties to appear, in-person, with evidence and witnesses that each side would like to present on the issue of whether the harboring of defendant's pet "causes damage to the subject premise, creates a nuisance or interferes substantially with the health, safety or welfare of other tenants or occupants of the same or adjacent building or structure."

By way of background, defendant is a resident within unit C3503 of a cooperative apartment building ("Co-op") located at 360 East 72nd Street in New York County (NYSCEF Doc. No. 1, Complaint at ¶ 2). As a tenant of the building, defendant entered into with the Co-op agreed to abide by a proprietary lease for residence within the apartment (NYSCEF Doc. No. 1, Complaint at ¶ 7). Pursuant to Article II, paragraph four of the proprietary lease, the Board of the Co-op may establish House Rules as the Board deems necessary for the management and control of the building (NYSCEF Doc. No. 1, Complaint ¶ 8).

655998/2021   360 EAST 72ND STREET OWNERS INC. vs. WOLKOFF, SABRINA
Motion No. 003

Page 1 of 11

A resident's failure to comply with the House Rules is deemed a substantial breach, which, at the discretion of the Board, may qualify for possible termination of the resident's proprietary lease.

The Co-op is a pet friendly building, however, within said House Rules, it is prohibited for pure or mixed breeds of Doberman Pinschers, Pit Bulls, and Rottweilers to enter or reside in the building (NYSCEF Doc. No. 83, House Rules). Defendant's dog is 91% American Staffordshire Terrier, which is one of the four recognized Pit Bull breeds and is therefore prohibited from the building (NYSCEF Doc. No. 99, Plaintiff's Opp.). Defendant contends that she is entitled to a judgment in her favor allowing her to keep her dog and maintain resident status in the building, because the Board allegedly had actual knowledge of defendant's dog but failed to take action in seeking to remove the dog within the first three months of having said knowledge. Due to such delay, defendant argues that plaintiff waived its right to enforce the Pit Bull prohibition under New York City Administrative Code § 27-2009.1. Plaintiff contends that it is entitled to a declaratory judgment and permanent injunction, because New York City Administrative Code § 27-2009.1 is inapplicable as the building is pet-friendly and only restricts Doberman Pinschers, Pit Bulls, and Rottweilers, which it is alleged interfere substantially with the safety and welfare of other tenants and building occupants. Moreover, under the House Rules and defendant's proprietary lease, defendant is prohibited from keeping her dog in the building and must remove it.

NY Code § 27-2009.1 (b) makes it clear that an owner or his or her agent has three months from the time said individual first gains knowledge of an animal to commence a summary proceeding or action that seeks the removal of said animal. If the action is not commenced within this three-month period, the provision that seeks to remove the animal is deemed waived, regardless of any particularized wording that may state otherwise within the relevant building's lease or house rules. *See also Seward Park Housing Corp. v Cohen*, 287 AD2d 157 [1st Dept 2001].

**655998/2021   360 EAST 72ND STREET OWNERS INC. vs. WOLKOFF, SABRINA**
**Motion No.  003**

**Page 2 of 11**

[* 2]

Plaintiff argues that it took "active and timely steps to compel Defendant to cure her violation of the House Rule" (NYSCEF Doc. No. 99, Plaintiff's Opp.). Specifically, that on June 11, 2021, plaintiff's attorney mailed a letter notifying defendant that she was in violation of the House Rule that prohibited Pit Bulls (NYSCEF Doc. No. 89, Bonanno Affidavit at ¶ 4). Plaintiff's attorney also served defendant with a Notice to Cure on July 26, 2021, and a Notice of Termination of Defendant's Proprietary Lease on August 30, 2021. As plaintiff alleges, due to defendant's refusal in complying with any of its orders to remove her dog from the building, plaintiff commenced this action on October 15, 2021, which is outside of the three-month period to commence an action seeking the removal of an animal under NY Code § 27-2009.1 (b). Due to such delay, and pursuant to NY Code § 27-2009.1 (b), the Court held in its interim decision and order that plaintiff's lease provision prohibiting the presence of Pit Bulls in the building is deemed waived, and plaintiff's waiver clause in the proprietary lease has no effect, as the statute is binding (NYSCEF Doc. No. 124).

However, the Court also held that subdivision (d) of § 27-2009.1 provides that "[t]he waiver provision of this section shall not apply where the harboring of a household pet causes damage to the subject premise, creates a nuisance or interferes substantially with the health, safety or welfare of other tenants or occupants of the same or adjacent building or structure" (NY Code § 27-2009.1 (d)). Defendant argues that

> "the pet's breed or supposed lineage of the dog is not evidence of nuisance, objectionable behavior or any dangerous propensity" (NYSCEF Doc. No. 76, Plaintiff's NOM at ¶ 32). "One allegation of any objectionable behavior cannot form the basis of a nuisance complaint. Herein, it is indisputable that the plaintiff has raised only one instance of objectionable behavior, that of chasing the process server at the apartment front door. There are no other allegations against the dog. As such, the one allegation of instance of objectionable behavior is not sufficient to support a claim of nuisance. The defendant emphatically denies that her puppy is undergoing some sort of aggression training or being 'weaponized' to attack on command. The defendant's dog Arthur has attended and passed the American Kennel Club Dog Good Dog program" (NYSCEF Doc. No. 76, Plaintiff's NOM at ¶ 34-37).

**655998/2021  360 EAST 72ND STREET OWNERS INC. vs. WOLKOFF, SABRINA**
**Motion No. 003**

**Page 3 of 11**

3 of 11

[* 3]

Plaintiff, submitted the affidavit of Kevin Zucker, a licensed process server who asserts that upon handing defendant her Notice of Termination, defendant "let her dog out of the apartment door to attack [Zucker]. The dog ran at [Zucker] and attempted to bite [Zucker]" (NYSCEF Doc. No. 97, K. Zucker Aff at ¶ 3). Plaintiff also provided an email from a shareholder of the building who states that before entering an elevator in the building, and as defendant was exiting said elevator with her dog, defendant allegedly told the shareholder's 3-year-old child to "back away because the dog will eat him" (NYSCEF Doc. No. 81, Shareholder Email). The Court held in its interim order and decision that a hearing was required to determine if the waiver exception applies.

The hearing commenced on May 23, 2023 and continued on June 12, 2023. Plaintiff called seven witnesses but only three directly testified as to whether the defendant's dog fits into the exception to the waiver provision in § 27-2009.1(d). The first witness called was Kevin Zucker who was a licensed process server who visited the building to serve the defendant (NYSCEF Doc. No. 126, p. 85-87). Zucker testified that he heard the dog when he knocked on defendant's door and that after he gave the defendant the papers the "next thing I know the dog – you know, she left the door open, and the dog is coming at me, and I'm running down..." (NSYCEF Doc. No. 136, p. 87). The "next thing I know the dog is coming at me. And then...there happened to be a fire exit door literally almost right next to her door, maybe a little distance. And I just beelined for that." (NYSCEF Doc. No. 136, p. 88). He further testified that he was afraid of the dog because "he was pretty agitated at me for sure. He was barking from the time I had knocked on the door. And Pit Bulls...are [a] little different than regular dogs...The dog was chasing me, yes." (NYSCEF Doc. No. 136, p. 88-89). He further testified that the dog was unleashed while the apartment door was open (NYSCEF Doc. No. 136, p. 89, 93). Zucker testified that the dog never touched him (NYSCEF Doc. No. 136, p. 93). The dog didn't bite him (NYSCEF Doc. No. 136, p. 95). When he got downstairs, Zucker reported the incident by phone to his supervisor, Jeff Wittenberg, who testified and

**655998/2021   360 EAST 72ND STREET OWNERS INC. vs. WOLKOFF, SABRINA**
**Motion No.  003**

**Page 4 of 11**

[* 4]

4 of 11

confirmed Zucker's account and further said he would not allow his personnel to serve any more papers on the defendant (NYSCEF Doc. No. 136, p. 98-102).

Plaintiff called Robert Greebel, a resident on the 28th Floor in the same C wing of the Co-op as the defendant, who testified about a February 27, 2022 occurrence when he and his three year old son were waiting for the elevator on their floor (NYSCEF Doc. No. 136, p. 67). Greebel testified that the elevator door opened and he saw the defendant and her dog. After they stepped back the defendant said "you better step back or he'll eat you" while looking at his Greebel's son (NYSCEF Doc. No. 136, p. 67). He memorialized the incident in an email and reported it to a building employee, Luis Perez (NYSCEF Doc. No. 136, p. 67-68, 77, 103-104). Greebel further testified about his discomfort in being in an elevator or common area with the dog and that he would avoid the elevator with his kids when the dog is present (NYSCEF Doc. No. 136, p. 68-70). "Ms. Wolkoff is not [a] particularly pleasant resident." (NYSCEF Doc. No. 136, p. 79). He never asked defendant to remove dog so he could ride in elevator (NYSCEF Doc. No. 136 p. 81).

Plaintiff also called Luis Perez, residential manager of the building, to testify essentially to how the video camera system works in the public areas of the building. On cross-examination Perez testified that he has known the defendant's dog for roughly two to three years and when denied that he had observed defendant's dog do "anything bad or objectionable." (NSYCEF Doc. No. 136, p. 109). The dog had been in his office and that he would "pet him" and "sometimes he actually falls asleep on my feet (NYSCEF Doc. No. 136, p. 109-110).

Additionally, plaintiff called Mitchell Rutter, a resident of the 18th Floor in the same C wing of the Co-op as the defendant who testified about an April 25, 2023 occurrence when he was about to enter the Co-op foyer and saw the defendant and her dog inside (NYSCEF Doc. No. 137, p. 126-127). Defendant "walked towards me with the Pit Bull yelling at me (NYSCEF Doc. No. 137, p. 127). Rutter

655998/2021   360 EAST 72ND STREET OWNERS INC. vs. WOLKOFF, SABRINA
Motion No. 003

Page 5 of 11

5 of 11

backed out of the area afraid that the defendant's demeanor could set the dog off as the defendant continued to yell at him saying "use the back entrance" to the building (NYSCEF Doc. No. 137, p. 128). Rutter further testified that the defendant used the dog to "block his way into the building." (NYSCEF Doc. No. 137, p. 128-129). The event is corroborated by both Perez and video (NYSCEF Doc. No. 137, p.105-106). Perez testified that Rutter's demeanor was "nervous, upset and agitated." (NYSCEF Doc. No. 136, p. 108). Rutter also made a report of the occurrence to Robert Weiner, the Co-op board president, who also confirmed the account (NYSCEF Doc. No. 136, p. 58-60).

Further, plaintiff called Jeanette Jiminez (formerly Rodriguez) the managing agent of the Co-op to testify essentially as to documents that were sent to and received by the defendant concerning her dog. On cross-examination she testified that she was personally familiar with defendant's dog who she volunteered is named "Archie." She further testified that she had touched and petted the dog (NYSCEF Doc. No. 136, p. 121). She also testified that in her personal experience she had not found the dog to be aggressive or dangerous (NYSCEF Doc. No. 136, p. 121-122). She had not experienced any difficulties with the dog (NYSCEF Doc. No. 136, p. 122).

In addition, plaintiff called the aforementioned Robert Weiner, who testified to the rules of the Co-op and how, in his view, defendant did not follow them. He gave no testimony about his own interactions with the defendant's dog.

Defendant called Bledar Diko, a handyman in the Co-op, who testified that he escorted the process server up to defendant's apartment and knocked on the door and when the door opened "the dog came out and then Ms. Wolkoff. The dog came to me, friendly" (NYSCEF Doc. No. 136, p. 127). He answered in the affirmative that the dog went straight to him "so I can pet him and stuff" and that when he turned around the process server was gone (NYSCEF Doc. No. 136, p. 127-128). He said the dog didn't lunge or chase the process server (NYSCEF Doc. No. 136, p. 129).

655998/2021   360 EAST 72ND STREET OWNERS INC. vs. WOLKOFF, SABRINA
Motion No.  003

Page 6 of 11

Additionally, defendant called Glen Roberts, a resident in the same C wing of the Co-op as the defendant, who testified that he has been in the elevator with defendant's dog and nothing "bad" happened (NYSCEF Doc. No. 136, p. 139). He testified that he was in the elevator with Greebel, Greebel's wife and his children when he observed a negative interaction or confrontation between defendant and Greebel. He heard defendant say "be careful" to Greebel and said it was not directed towards Greebel's children (NYSCEF Doc. No. 136 p. 140-141).

Further, defendant produced Jerry Thorton, a resident of the C wing of the Co-op, who testified that he has met defendant's dog "numerous times" and pets and touches the dog every time he sees him (NYSCEF Doc. No. 137, p. 3). He further testified that the dog does not make him fearful (NYSCEF Doc. No. 137, p. 4). He responded "never" when asked if he has ever witnessed the dog do anything objectionable (NYSCEF Doc. No. 137, p. 5).

In addition, Defendant called Elizabeth Steed, a resident of a nearby building, who testified that she knows defendant and her dog because she frequently takes care of and walks defendant's dog with other dogs as a dog sitter (NYSCEF Doc. No. 137, p. 12). She walks defendant's dog with Jane Kopelman's therapy dogs and that defendant's dog could not be with them if it didn't have a certain good temperament. She said the dog acts "perfectly excellent" with the other dogs. She has known the dog for over two years. She further testified that she has never observed a problem with the dog riding in a small elevator in her building or in its interactions with children (NYSCEF Doc. No. 137, p. 15).

Finally, defendant testified that her dog is registered and electronically chipped and was trained with the American Kennel Club and is part of the club (NYSCEF Doc. No. 137 p. 30-32). She said that the certificate essentially renders her dog "a well-behaved good citizen." (NYSCEF Doc. No. 137 p 34). Defendant introduced into evidence a large number of photographs of people, mostly residents, in the building with her dog, in many cases petting it (NYSCEF Doc No. 137 p. 45-68). Defendant was asked

655998/2021  360 EAST 72ND STREET OWNERS INC. vs. WOLKOFF, SABRINA
Motion No. 003

Page 7 of 11

[* 7]

7 of 11

if the dog has any problem riding in elevators with people and she answered "no elevator. Not even subway." She admits that "[t]here are a handful of people that are afraid of the dog" and that she lets people who ask to not ride elevator with the dog "go first." (NYSCEF Doc. No. 137 p. 68). She also testified that since she is on the 35th Floor and usually in the elevator first that she would have "no problem" leaving the elevator with the dog if asked although that doesn't happen often (NYSCEF Doc. No. 137 p. 69). She denies the accounts of the process server Kevin Zucker and Robert Greebel (NYSCEF Doc. No. 137 p. 73-75). On cross-examination defendant stated that her dog is not a Pit Bull because her daughter did a DNA test and "no Pit Bull came out of it." (NYSCEF Doc. No. 137, p. 79-80). She did know that it is a "Staffordshire Terrier, I didn't know that was Corsican and Mastiff, but I knew that was a Staffy." (NYSCEF Doc. No. 137 p. 81). Defendant stated that her dog is not trained to attack people in response to questioning about how physically large and muscular the dog is, how large the jaw of the dog is. Defendant denies she knew about a building prohibition about Pit Bulls (NYSCEF Doc. No. 137 p. 105). She did not remove the dog from the Co-op when "the building started a whole uproar" because she asserts that her dog is not a Pit Bull (NYSCEF Doc. No. 137, p. 105-106). When asked about the Michell Rutter incident defendant stated that he precipitated it by filming her from the sidewalk on his phone and "screaming" at her about her keeping the dog in the Co-op. She denies blocking his entrance into the lobby (NYSCEF Doc. No. 137 p. 106-109).

After considering the hearing testimony and evidence presented during the pendency of this action, the Court finds no basis to revisit its decision in the interim decision and order concerning the three-month open and obvious rule set forth in New York City Administrative Code § 27-2009.1. Plaintiff elicited testimony from defendant and others on this issue about defendant's knowledge about the Co-op rules and whether her Pit Bull ownership was "open and notorious." But these issues were decided by the Court in its interim decision and order and the testimony failed to reveal anything to cause the Court to revisit them.

655998/2021  360 EAST 72ND STREET OWNERS INC. vs. WOLKOFF, SABRINA
Motion No. 003

Page 8 of 11

8 of 11

Sending letters, or even attempting to terminate the proprietary lease, within the three-month time frame does not substitute for commencing a summary proceeding or action. This may serve to discourage parties from working out issues without having to resort to litigation but that is the law as it is written and how it has been interpreted by the courts. The Court is similarly unpersuaded by plaintiff's argument that NY Code § 27-2009.1 was intended to apply only to cases where a building has a blanket no pet policy and not buildings where there are restrictions of certain pets. Nor is the Court persuaded by plaintiff's argument that cooperative buildings are exempt from the law. "[C]ourts are obliged to interpret a statute to effectuate the intent of the Legislature, and when the statutory language is clear and unambiguous, it should be construed so as to give effect to the plain meaning of the words used" (*People v Williams*, 37 NY3d 314, 317-318 [2021] [internal quotation marks and citation omitted]). The "text itself is generally the best evidence" of the legislature's intent (*Colon v Martin*, 35 NY3d 75, 78 [2020] *rearg dismissed*, 38 NY3d 1122 [2022]), as "a court cannot amend a statute by inserting words that are not there, nor will a court read into a statute a provision which the Legislature did not see fit to enact" (*Matter of Chemical Specialties Mfrs. Assn. v Jorling*, 85 NY2d 382, 394 [1995], *rearg denied* 85 NY2d 1033 [1995] [internal quotation marks and citation omitted]).

Plaintiff essentially presented a case about how dangerous Pit Bulls in general can be, albeit without any expert testimony to support that position, and that several residents of the Co-op are afraid of Pit Bulls. But this only establishes why the Co-op set forth a no Pit Bull policy to begin with. However, fear, or the purported danger, of a certain breed of dog isn't enough to trigger a NY Code § 27-2009.1 (d) waiver. In fact, based on this Court's holding in its interim order, and reaffirmed above, the fact that defendant's dog is a Pit Bull is irrelevant to this analysis. Any dog that is banned by the House Rules of the Co-op that meets the criteria for the waiver exception to the three-month rule pursuant to NY Code § 27-2009.1 (d) can be subject to a removal order. To hold otherwise, by adapting plaintiff's

655998/2021   360 EAST 72ND STREET OWNERS INC. vs. WOLKOFF, SABRINA
Motion No. 003

Page 9 of 11

[* 9]

arguments that all Pit Bulls because of their "inherent" dangerous nature interfere substantially with the "health, safety and welfare" of people in the Co-op, would render the three-month open and obvious rule meaningless with respect to Pit Bulls – or any other dog the Co-op has banned. Therefore, it was incumbent on the plaintiff to establish that defendant's specific dog fits within the exception based on its actual behavior.

Plaintiff did not even try to establish that the defendant's dog caused any damage to the Co-op. The plaintiff also failed to establish that the defendant's dog was a nuisance. The only occurrence presented by the plaintiff that could reasonably be considered an example of the dog interfering with a person's "health, safety, or welfare" was through Kevin Zucker's testimony, which was challenged by both the defendant and the plaintiff's own employee, Bledar Diko, who were the only other witnesses to the event. Even with the Court crediting Zucker's testimony as a reflection of what occurred, defendant's dog caused him no physical harm that impinged on his "health, safety or welfare." In addition, the Zucker incident is the only such occurrence presented to the Court, which negatively impacts the "interfere substantially" requirement of the waiver requirement. The defendant's interaction with Robert Greebel in the elevator, if the Court was to credit his account, doesn't rise to the level of impinging on his "health, safety or welfare" as the dog itself did not threaten or menace Greebel. The alleged threatening statement was by the defendant. Similarly, the defendant's interaction with Mitchell Rutter in the lobby did not show concerns about her dog's actual behavior, but that of the defendant. Ultimately, what the testimony makes clear is that there are significant personality conflicts between the defendant and some other residents of the Co-op that do not have to do with the actual behavior of her dog – but rather her ownership of it, and those residents' fear of its breed.

In making its determination, the Court credits the testimony of the numerous witnesses – including witnesses called by and employed by the plaintiff - who testified about their own positive interactions

[* 10]

with the defendant's dog as supporting defendant's position that the dog does not interfere substantially with the "health, safety and welfare" of people in the Co-op. None of these witnesses testified that they have seen the defendant's dog behave in a violent way over a period of several years. Nor did any testify that the dog caused any damage or was a nuisance.

Therefore, the Court finds that the plaintiff failed to establish by a preponderance of the evidence that the defendant's harboring of her dog caused "damage to the subject premise, create a nuisance or interfere substantially with the health, safety or welfare of other tenants or occupants of the same or adjacent building or structure" as set forth in NY Code § 27-2009.1 (d). In making this decision the Court recognizes, and has serious concerns about, the occurrence with Kevin Zucker, even if this one instance of the dog's apparent agitation did not impact his "health, safety or welfare" and does not rise to the "interfere substantially" level required by law for the waiver exception to apply. That being said, the Court encourages the defendant to continue to adhere to her stated practice of leaving the elevator with her dog if another person requests that she do so. It also might be the best practice for defendant to use an alternate means of egress in and out of the Co-op other than the main entrance when with her dog so as to limit its interactions with persons who have a genuine fear of Pit Bulls.

The Court has considered all remaining arguments advanced by plaintiff in support of the relief sought in this action and find them to be without merit.

Accordingly, the defendant's motion for summary judgment dismissing the action is granted, and the plaintiff's cross-motion is denied. This constitutes the decision and order of the Court.

| 04/04/2024 | | | | |
|---|---|---|---|---|
| DATE | | | ALEXANDER M. TISCH, J.S.C. | |
| CHECK ONE: | X  CASE DISPOSED | | NON-FINAL DISPOSITION | |
| | X  GRANTED | ☐ DENIED | GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | ☐ REFERENCE |

655998/2021  360 EAST 72ND STREET OWNERS INC. vs. WOLKOFF, SABRINA
Motion No. 003

Page 11 of 11

11 of 11